IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS HANDSHOE                                                    PLAINTIFF

VS.                                        CIVIL ACTION NO. 1:15-cv-00113-KS-RHW

TORSTAR CORPORATION (DBA
TORONTO STAR NEWSPAPERS LTD.)
PETER EDWARDS                                                      DEFENDANTS

### MEMORANDUM OF DEFENDANTS TORSTAR CORPORATION AND PETER EDWARDS IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S CIVIL COMPLAINT FOR DAMAGES

Defendants Torstar Corporation and Peter Edwards (collectively, "Defendants"), by and through their attorneys, respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Civil Complaint for Damages.

Defendants seek dismissal because the Court lacks personal jurisdiction over a Canadian website which is being sued for an article it published concerning a Canadian Court's decision granting a default judgment against the Plaintiff who failed to appear in Canada. *See* pp. 5-8, infra.

In the alternative, if this Court has jurisdiction, Defendants seek dismissal because the subject article fairly describes the Canadian Court's decision and so is protected by Mississippi's official report privilege. *See* pp. 8-12, infra.

In the further alternative, Defendants move to dismiss the Complaint because Plaintiff did not give written notice to Defendants at least 10 days before filing suit as required by § 91-1-5, Miss. Code 1972, as amended, and the applicable statute of limitations, § 15-1-35, Miss. Code 1972, bars any attempt to refile it. *See* pp. 12-13, infra.

Each of these grounds independently supports dismissal.

## I.        STATEMENT OF FACTS

Plaintiff is a resident citizen of Hancock County, Mississippi.  *See* Compl., at ¶ 1. He owns Slabbed New Media, LLC and publishes an online weblog at www.slabbed.org in Mississippi.  *Id*.  Defendant Torstar Corporation is a Canadian company whose subsidiary operates an online news site titled *The Toronto Star* in Canada.  *Id.* at ¶¶ 2, 13.  Defendant Peter Edwards is a reporter for *The Toronto Star*, and he is a resident of Canada.  *Id.* at ¶ 3.

On August 7, 2012, the Supreme Court of Nova Scotia issued a decision regarding a default judgment for $427,000 entered against Plaintiff in a suit for  defamation, invasion of privacy, injurious falsehood, international interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional and mental distress and assault attributed to Plaintiff's online weblog.  *See* Exhibit A to [2] Defendants' Answer, at p. 4. The Supreme Court of Nova Scotia found that "Mr. Handshoe made extremely derogatory and homophobic comments of the most outrageous kind…." *Id.* at p. 17.  Additionally, the Supreme Court of Nova Scotia found Plaintiff's comments to be "anti-gay," "homophobic" and "highly offensive." *Id.* at p. 21.  The United States Court of Appeals for the Fifth Circuit ultimately held that the judgment against Plaintiff could not be collected in a United States District Court.  *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013).

That did not end the controversy between Mr. Handshoe and the Canadian residents he had attacked.  They sued him again for statements he had made about them on his weblog.  On February 14, 2014, the Supreme Court of Nova Scotia found that "Mr. Handshoe has continued to repeatedly publish words referring to the personal plaintiffs as 'girls', 'bitches', 'bottom boys', 'wives', 'perverted' and 'queer fag scum." *See* Exhibit A to [2] Defendants' Answer, at p. 35. The Supreme Court of Nova Scotia entered an additional judgment against Plaintiff for

defamation and copyright infringement and noted "the actions and words of Mr. Handshoe…are clearly defamatory.  Furthermore they have no relationship to fact or truth."  *Id.* at p. 36.

On February 24, 2014, *The Toronto Star* published on its website an article written by Peter Edwards about the 2014 Canadian Court opinion. It was entitled "Nova Scotia Couple Wins Copyright Lawsuit against Homophobic U.S. Blogger."  *See* Exhibit B to [2] Defendants' Answer.

Plaintiff then filed this defamation lawsuit *pro se* in the Circuit Court of Hancock County, Mississippi against Defendants on February 23, 2015.  *See* Complaint at ¶ 1.  Based on complete diversity of citizenship, the Defendants timely removed the case to this Court on April 6, 2015.  [1]

In his Complaint for defamation, Plaintiff alleges that Defendants "never undertook so much as a cursory investigation of the underlying proceedings in these Canadian court actions, to which [he] defaulted rather than submit to the jurisdiction of the Canadian courts…."  *See* Compl., at ¶ 13.  He further alleges that Defendants "mischaracterize[ed] Plaintiff's reporting as a regurgitation of retracted material from the Times Picayune [and] [t]his characterization is materially false and misleading."  *Id.* at ¶ 13.  Further, Plaintiff claims that Defendants "falsely categorized [his] reporting…as a campaign of homophobia and Plaintiff as a 'homophobic blogger,' a defamatory assertion that is materially false and was made with reckless disregard for the truth."  *Id.* at ¶ 14.

## II.    ARGUMENT

This is a motion to dismiss under Fed. R. Civ. P. 12(b)(2) or, in the alternative, Fed. R. Civ. P. 12(b)(6).  The only facts on which it relies outside the Complaint are the Canadian

Court's decision, to which the Complaint expressly refers and so incorporates by reference, and certain jurisdictional facts that cannot be disputed.

A plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). In considering a motion to dismiss for lack of personal jurisdiction, a district court may consider affidavits, interrogatories, depositions, oral testimony or any recognized methods of discovery. *Id.* The court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in affidavits and other documents in the plaintiff's favor. *Id.* "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for specific jurisdiction has been presented." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff*." Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level'" *Emesowum v. Houston Police Dep't.*, 561 F. App'x 372, 374 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555 (2007)).

This Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction over the Defendants. If it does not do so, the Court should dismiss it because the subject article is a fair report of the Canadian Court's decision or because the Plaintiff failed to comply with the

Mississippi retraction demand statute and he cannot refile because the statute of limitations has run.

**A. The Court should dismiss this case for lack of personal jurisdiction over the Defendants.**

A federal district court sitting in diversity may exercise jurisdiction over a nonresident defendant only if: (1) the state's long-arm statute provides jurisdiction, and (2) due process under the Fourteenth Amendment is satisfied. *Mortensen Constr. & Util., Inc. v. Grinnell Mut. Reinsurance Co.*, 718 F. Supp. 2d 781, 782 (S.D. Miss. 2010); *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).

Plaintiff contends that he is entitled to the benefit of the state long-arm statute because defendants have committed a tort in Mississippi by publishing an article on their Canadian website about the suit against him in Canada. Compl. ¶5. If true, that would satisfy the requirement of the long-arm statute. Miss. Code Ann. § 13-3-57 (2014). But the Court need not reach that question because it is clear that, under the due process clause, there is no personal jurisdiction over a foreign website whose focus is on the decision of a Canadian Court. *See Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002).

**1. The Defendants are not subject to general jurisdiction in Mississippi.**

Plaintiff cannot show that the Defendants have continuous and systematic contacts with Mississippi that would support the exercise of general jurisdiction in this case. *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014). Defendant Torstar does not have an office in Mississippi. Torstar Decl. at ¶ 5, Exh. A to Motion to Dismiss. Further, Defendant Torstar does not have any employees in Mississippi. *Id.* Defendant Torstar does not solicit business in Mississippi or derive any income from Mississippi customers. *Id.* And while Defendant Torstar's subsidiary newspaper, *The Toronto Star,* operates an online website, its readers predominately live in

Canada.  Torstar Decl. at ¶ 2.  Defendant Edwards similarly has no connection to Mississippi as he has never even visited the State.  Edwards Decl. at ¶ 4, Exh. B to Motion to Dismiss.

### 2. The Court cannot exercise specific jurisdiction over the Defendants.

**a.  Personal jurisdiction is not proper in an Internet libel action unless the forum state is the focus of the Defendants' article or the Defendants targeted readers in the forum state.**

In the absence of continuous and systematic contacts, Plaintiff must establish that the Court can exercise specific jurisdiction over the Defendants.  Specific jurisdiction is proper only if: (1) the defendants have purposefully directed their activities at residents of the forum; and (2) the litigation results from alleged injuries that arise from or relate to those activities.  *Burger King*, 471 U.S. at 472.

The Fifth Circuit's decision in *Revell v. Lidov* stated the applicable test and found no specific jurisdiction over a foreign website. 317 F.3d 467 (5th Cir. 2002).  In *Revell*, a Massachusetts professor posted an article on a New York website accusing a Texas resident and former FBI official of covering up a plot to blow up an airplane.  *Id.* at 469.  The former FBI official filed a libel suit against the website and professor in federal district court in Texas.  *Id.* After determining that general jurisdiction did not exist, the court turned to specific jurisdiction. *Id.* at 471.  The plaintiff argued that application of an "effects" test subjected the defendants to jurisdiction because the impact of the article was felt most directly in Texas.  *Id.* at 473.  The Fifth Circuit disagreed, however, and held that a "*plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction*."  *Id.* (emphasis added).

Further, the Fifth Circuit said that the jurisdictional inquiry should center on the geographic focus of the article and a more direct aim at the forum state was required to support personal jurisdiction.  *Id.* at 476.  In other words, personal jurisdiction is not proper in an Internet

libel action unless the forum state is the focus of the defendant's article or the defendant targeted readers in the forum state.  *Id.* at 473.

Since *Revell,* the Fifth Circuit has consistently used the geographic focus test to determine whether nonresident libel defendants were subject to personal jurisdiction.  In *Fielding v. Hubert Burda Media*, for example, a socialite couple filed a defamation lawsuit in Texas against nonresident defendants and owners of a German news magazine based on publication of an article alleging an extra-marital affair.  415 F.3d 419, 422-23 (5th Cir. 2005).  The couple lived in Germany, where the article was published, but the wife was originally from Texas.  *Id.* Although the article referenced Texas, the court found that it lacked jurisdiction over the nonresident defendants because Germany was the focal point of the story—not Texas.  *Id.* at 426-27.  The court reached this decision despite the fact that the nonresident defendants used some Texas sources to conduct research for the article.  *Id.* at 426.  This is so because "the clear thrust" of the article was not Texas, and the court found that the research was merely to provide background information.  *Id.*  Further, the court noted that the nonresident defendants primarily reported on German activities of German residents and 97% of the magazine issues were sold in Germany.  *Id.*

 *See also, Clemens v. McNamee*, 615 F.3d 374, 379-80 (5th Cir. 2010) (declining to exercise personal jurisdiction over nonresident libel defendants because the forum must be the focal point of the story and plaintiff must show that (1) the subject matter of and (2) the sources relied upon for the article were in the forum state."); *Ouazzani-Chahdi v. Greensboro News & Record, Inc.*, 200 F. App'x 289, 292 (5th Cir. 2006) (dismissing the case for lack of personal jurisdiction and holding that "Specific jurisdiction in suits alleging an intentional tort based on the publication of defamatory material exists for (1) publication with adequate circulation in the

forum state or (2) an author or publisher who "aims" a story at the state knowing the "effects" of the story will be felt there.")

**b.  The Defendants did not aim the subject article at Mississippi.**

The Defendants did not aim their conduct or the subject article at Mississippi.  The article on its face shows that its sole concern is the Supreme Court of Nova Scotia's opinion.  *See* Exhibit B to [2] Defendants' Answer.  Indeed, the focal point or geographic focus of the subject article is Canada, not Mississippi.  Defendant Edwards wrote the subject article in Canada, and he primarily relied on sources in Canada—namely, the Supreme Court of Nova Scotia's decision.  Edwards Decl. at ¶¶ 3-4, Exh. B to Motion to Dismiss.  In fact, the *sole* Mississippi source used to write the subject article is Plaintiff as he was contacted for comment on the Canadian decision.  Edwards Decl. at ¶ 4; *See also* Exhibit B to [2] Defendants' Answer.  In fact, the only reason Mississippi is identified is that Plaintiff lives in Mississippi.

Nor was there any attempt to "target" readers in Mississippi.  *The Toronto Star* predominately reports on Canadian news events.  Torstar Decl. at ¶ 2, Exh. A to Motion to Dismiss.  Moreover, its readers mainly come from Canada.  *Id.*  As of March 30, 2015, the subject article had been viewed online 12,691 times, of which only 10 (less than 1/10[th] of one percent) were in Mississippi.  Torstar Decl. at ¶ 4.

**B.  In the alternative, this case should be dismissed because the subject article is protected by the privilege to report official acts.**

Should the Court decide that it has personal jurisdiction over the Defendants, Plaintiff's defamation claim fails in any event because Peter Edwards fairly reported on the Supreme Court of Nova Scotia decision and the subject article published by *The Toronto Star* is protected by the privilege to report official acts.   To succeed on a defamation claim, a plaintiff must prove: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third

8

party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm of the existence of special harm caused by the publication.[1]  *Hegwood v. Community First Holdings, Inc.*, 546 F.Supp.2d 363, 366 (S.D. Miss. 2008) (citing *Johnson v. Delta-Democrat Pub'g Co.*, 531 So. 2d 811, 813 (Miss. 1998)).

In Mississippi, "*a newspaper has a qualified privilege to republish statements found in a report of an official action or proceedings* or of a meeting open to the public that deals with a matter of public concern…*if the report is accurate and complete or a fair abridgement of the occurrence reported*."   *Hegwood*, 546 F.Supp.2d at 366 (citing *Brocato v. Mississippi Publishers' Corp.*, 503 So. 2d 241, 244 (Miss. 1987)) (emphasis added).   In *Hegwood*, the plaintiff filed a defamation action against a defendant newspaper for publication of an article about his arrest for home repair fraud.  *Id.* at 364.  The defendant newspaper filed a motion for summary judgment on the basis that the article was true or substantially true and it was protected by the official report privilege.  *Id.*  Whether the privilege applies is a matter for the court to decide.  *Id.* at 366. (citing *Pittman v. Gannett River States Publ'g Corp.*, 836 F.Supp. 377, 382 (S.D. Miss. 1993)).   Because the defendant newspaper relied on an arrest report from the Sheriff's Department to write and publish the article, the court found that the article was "a fair and accurate republication of an official report" and the article was protected by the official report privilege.  *Id.* at 365, 367.

The privilege applies here and defeats Plaintiff's defamation claim because the subject article is based on an official action or proceeding from the Supreme Court of Nova Scotia and the article is an accurate and complete or fair description of the Supreme Court of Nova Scotia's decision.

---

[1] In relying on this legal proposition, Defendants do not waive the right to assert at a later time that Plaintiff is a vortex public figure, and that a different legal standard applies to his burden of proof.

9

With the exception of contacting Plaintiff and his Louisiana lawyer for comments, Defendant Edwards relied solely on the Supreme Court of Nova Scotia's decision to write the subject article.  Edwards Decl. at ¶¶ 3-4, Exh. B to Motion to Dismiss.  In fact, a side-by-side comparison reveals that much of the subject article is a virtual verbatim summary of the Supreme Court of Nova Scotia's decision.  *See* below.

| 2/14/2014 Supreme Court of Nova Scotia Decision (Exhibit A to [2] Defendants' Answer) | "Nova Scotia Couple Wins Copyright Lawsuit against Homophobic U.S. Blogger" (Exhibit B to [2] Defendants' Answer) |
|---|---|
| I find that Mr. Handshoe's conduct towards the applicants over the past few years amounts to "outrageous and highly reprehensible" conduct. (p. 42) | … judge calls an "outrageous and highly reprehensible" homophobic Internet smear campaign from a Mississippi blogger.  (¶ 1) |
| Coady reiterates Hood's summary: The plaintiffs were erroneously identified as being connected with Mr. Broussard in a business venture and Mr. Broussard was named in error as owning Trout Point Lodge. (pp.31-32)<br>Aaron Broussard was involved in a political corruption scandal. (p.31) | Coady ordered Handshoe to pay $390,000 after the blogger repeatedly smeared the Nova Scotia couple and incorrectly linked them to a Louisiana political scandal. (¶ 3) |
| The actions and words of Mr. Handshoe since the first application are clearly defamatory. Furthermore they have no relationship to fact or truth. (p.36) | "The actions and words of Mr. Handshoe … are clearly defamatory," Coady wrote in his decision. "Furthermore they have no relationship to the truth."  (¶ 4) |
| They amount to nothing more than a misguided attempt to destroy Mr. Leary, Mr. Perret and Trout Point Lodge. (p.36) | "They amount to nothing more than a misguided attempt to destroy Mr. Leary, Mr. Perret and Trout Point Lodge." (¶ 4) |
| That action sought damages for "defamation, invasion of privacy, injurious falsehood, intentional interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional and mental distress and assault." (p.31) | … suing for "defamation, invasion of privacy, injurious falsehood, intentional interference with contractual relations, intentional interference with economic relations, intention infliction of emotional and mental distress and assault." (¶ 9) |
| … all of the photographs were the property of the applicants when utilized by Mr. Handshoe. (p.41) There is ample evidence that Mr. Handshoe disseminated the four photographs for commercial purposes. (pp.39-40) | Coady ruled that Handshoe had no right to use the photos. (¶ 12) |
| "Their misuse amounted to an ongoing campaign to damage, harass and embarrass the applicants." (p. 41) | "Their misuse amounted to an ongoing campaign to damage, harass and embarrass the applicants." (¶ 13) |
| The reason … that this band of gay men act as a unit that will also scatter like cockroaches when the heat is applied. (p.35)<br>Referred to the personal plaintiffs as "girls", | Handshoe also peppered his blog postings with anti-gay smears. (¶ 5) |

10

| "bitches", "bottom boys", "wives", "perverted", and "queer fag scum." (p.35) | |

It is sufficient that the article "conveys to the persons who read it *a substantially correct account of the proceedings*." *Pittman v. Gannett River States Pub'g*, 836 F.Supp. 377, 382-83 (S.D. Miss. 1993) (emphasis added).  Further, it is not necessary for "each quote or statement to be specifically attributed to an official document or proceeding; rather, it is necessary only that, when considered in context, it is clear that the article is quoting, paraphrasing or otherwise drawing upon official documents or proceedings." *Id.* at 382-83.

If the account on the Canadian opinion is substantially accurate or complete, the newspaper does not have any duty to investigate the underlying proceeding.  *See Brocato v. Mississippi Publishers' Corp.*, 503 So. 2d 241, 245 (Miss. 1987) (finding no issue of fact where "the defendants' article was an admittedly accurate and complete description of th[e] official action.")  Thus, Plaintiff cannot defeat the privilege by claiming that  the Defendants "never undertook so much as a cursory investigation of the underlying proceedings in these Canadian court actions, to which Plaintiff defaulted…." *See* Compl., at ¶ 13.  It is the decision of the Canadian Court that characterized comments from Plaintiff's blog as "homophobic."  The Defendants could not recklessly disregard the truth by correctly reporting that the Canadian Court made the accusation.  If Plaintiff had wanted to prove otherwise, he should have appeared in Canada and defended the allegations against him there. In fact, by defaulting he virtually ensured that the Canadian Court would reach that conclusion.  He should not now be allowed to put on a defense by suing a Canadian website for accurately reporting what the Canadian Court found.

It does not assist Plaintiff's case to attribute to the article statements that are simply not there. He alleges Defendants mischaracterized his reporting "as a regurgitation of retracted

material from the Times Picayune [and] this characterization is materially false and misleading."

*Id.* That statement does not appear anywhere in the subject article. *Compare* Compl., at ¶ 13

*with* Exhibit B to [2] Defendants' Answer.

Nor is it any help for Plaintiff to allege that the article contains other, allegedly

unprivileged statements, when he does not say what those statements are or why they are false or

defamatory. *See* Compl., at ¶ 19.

**C.   If reached, this case should also be dismissed because Plaintiff failed to provide notice to Defendants for any retraction of the subject article, and the statute of limitations has now run.**

While Defendants contend that the subject article fairly and accurately reported on the

Supreme Court of Nova Scotia's decision, this case should also be dismissed because Plaintiff

failed to provide notice to Defendants for any retraction of the subject article.  Miss. Code Ann. §

95-1-5 (2014) provides in part:

> Before any civil action is brought for publication, in a newspaper domiciled and published in this state or authorized to do business in Mississippi so as to be subject to the jurisdiction of the courts of this state, of a libel, or against any radio or television station domiciled in this state, the plaintiff shall, at least ten (10) days before instituting any such action, serve notice in writing on the defendant at its regular place of business, specifying the article, broadcast or telecast, and the statements therein, which he alleges to be false and defamatory.

Defendants believe that this Court lacks jurisdiction, and so the retraction statue applicable to

those "subject to the jurisdiction of the courts of this state" does not apply here.  If the Court

should find jurisdiction, however, then the retraction statute is of full force and effect and

Plaintiff has failed to comply with it.

Mississippi courts have consistently held that this statute requires a plaintiff to give ten

days' notice to the defendant before filing a libel action.  *See Brocato*, 503 So. 2d at 243 ("The

Court finds the ten day notice required in § 95-1-5 is clearly a necessary preliminary step to the

proper filing of a libel action and that the preliminary step must be satisfied within the statutory limitation period"); *King v. Mississippi*, No. 3:14-cv-157-CWR-FKB, 2015 U.S. Dist. LEXIS 8541, at *14-15 (S.D. Miss. Jan. 26, 2015) (finding that plaintiffs' failure to provide notice prior to filing suit for defamation warranted dismissal pursuant to Miss. Cod Ann. § 95-1-5); *Pannell v. Associated Press*, 690 F.Supp. 546, 549 (N.D. Miss. 1988) ("The plain language of the statute requires that plaintiff must serve a demand for retraction before any civil action is filed against a newspaper for libel.")

The subject article was published on February 24, 2014.  *See* Compl., at ¶ 5.  Plaintiff filed this defamation lawsuit on February 23, 2015, which would have been within the one-year statute of limitation for libel claims had Plaintiff given timely written notice under § 95-1-5.  *See*, *Brown v. Prentiss Reg'l Hosp. & Extended Care Facility, Inc.*, No. 2:11-cv-180-KS-MTP, 2013 U.S. Dist. LEXIS 23161, at *28 (S.D. Miss. Feb. 19, 2013) ("Claims for defamation are subject to a one-year statute of limitations") (citing Miss. Code Ann. § 15-1-35)).

The Defendants, however, did not receive any notice in writing from Plaintiff specifying the statements in the subject article that he alleges are false and defamatory 10 days prior to filing this defamation suit.  Torstar Decl. at ¶ 6; Edwards Decl. at ¶ 5.  In fact, the Defendants first learned of Plaintiff's grievance with the subject article upon receipt of the Complaint.  *Id.* As such, Plaintiff failed to comply with the retraction statute as codified in Miss. Code Ann. § 95-1-5 within the one-year statute of limitations, and the Court should dismiss Plaintiff's defamation claim for this additional independent reason.

### III.     CONCLUSION

For the foregoing reasons, Plaintiff's complaint must be dismissed in its entirety.

This the 26th day of June, 2015.

Respectfully submitted,

DEFENDANTS TORSTAR CORPORATION
AND PETER EDWARDS

By: *s/Robert C. Galloway*
     ROBERT C. GALLOWAY, MB #4388
     LUTHER T. MUNFORD, MB #3653
     META C. DANZEY, MB #103251

     THEIR ATTORNEYS

OF COUNSEL:

BUTLER SNOW LLP
1300 Twenty-Fifth Avenue, Suite 204 (39501)
Post Office Drawer 4248
Gulfport, Mississippi  39502
Telephone:  (228) 864-1170
Facsimile:   (228) 868-1531
E-mail: bob.galloway@butlersnow.com
E-mail: meta.danzey@butlersnow.com

BUTLER SNOW LLP
1020 Highland Colony Parkway, Ste. 1400
Ridgeland, Mississippi 39157
Telephone:  (601) 948-5711
Facsimile:   (601) 985-4500
E-mail: luther.munford@butlersnow.com

## **CERTIFICATE OF SERVICE**

I, Robert C. Galloway, one of the attorneys for the Defendants, hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following counsel for record:

Douglas Handshoe
214 Corinth Drive
Bay St. Louis, MS  39520

*Pro Se* **Plaintiff**

So certified, this 26th day of June, 2015.

*s/Robert C. Galloway*
ROBERT C. GALLOWAY

ButlerSnow 26211966v1