*Exhibit 3*

# TROUT POINT LODGE, LIMITED

(902) 761-2142
(800) 980-0713

| To: | Douglas K. Handshoe | From: | Charles L. Leary |
|---|---|---|---|
| Fax: | (601) 928-5129 | Date: | 9/30/2013 10:09 AM |
| Phone: | | Re: | HFX 411345 |

Comments

Signed original sent by post.

# facsimile

Trout Point Lodge, et. al. v. Douglas Handshoe                    No. 411345

## STATEMENT OF CLAIM AMENDED SEPTEMBER 30, 2013

1. Trout Point Lodge, Limited, Vaughan Perret, and Charles Leary claim against Defendant
   Douglas Kyle Handshoe for copyright infringement relating to 4 creative works protected by
   the Canadian *Copyright Act* R.S., c. C-30, s. 1., for multiple counts of defamation under the
   Nova Scotia *Defamation Act*. R.S., c. 122, s. 1., and for wrongful misappropriation of
   personality.

2. **Parties**: The plaintiff Charles Leary is a Managing Director and hands-on proprietor of Trout
   Point Lodge.

3. The Plaintiff Vaughn Perret is a Managing Director and hands-on proprietor of Trout Point
   Lodge.

4. The Plaintiff Trout Point Lodge is a Nova Scotia limited company and has operated an
   accommodation and restaurant business in Nova Scotia, Canada since 2000. Trout Point Lodge
   employs up to 17 persons annually. The Trout Point business has expanded steadily since 2000
   to the date of this filing.

5. Trout Point\s Internet reputation is vital to its successful business operations.

6. All three Plaintiffs are resident in Kemptville, Yarmouth County, Nova Scotia.

7. To understand some of the quoted passages below, it is essential to know that Handshoe
   repeatedly refers to the personal male plaintiffs as "the girls," "the goatherders" and as
   "cockroaches."

8. The Defendant Douglas K. Handshoe is publisher of the blog "Slabbed" at slabbed.org and
   previously slabbed.wordpress.com. He resides in Bay St. Louis, Mississippi, United States of

America, and works from an office in Wiggins, Mississippi. Slabbed received more than 40,000 monthly views by March, 2011, with viewership rising.

9. Handshoe operates Slabbed as a commercial web site and a business.

10. Handshoe refers to followers of and contributors to Slabbed as members of "the Slabbed Nation." Handshoe says there are two "chapters" of the Slabbed Nation, one in the Gulf South of the United States and one in Nova Scotia, Canada. The Nova Scotia "chapter" was founded in the summer of 2011.

11. At relevant times, Defendant Handshoe solicited and received income from Slabbed for continuing his "investigations" of and publications about the Plaintiffs, including solicitation of money in Nova Scotia.

12. Nova Scotia members of "the Slabbed Nation" promoted Slabbed in Nova Scotia and directed Nova Scotians to the blog via social media, including but not limited to Facebook, including URL redirects from Facebook.ca, and on Twitter.

13. In the latter half of August, 2011, Defendant Handshoe told a *Frank* magazine reporter in a telephone interview from Halifax, NS, that he was "screwing with" the Plaintiffs by publishing about them on Slabbed. This was the start of a long-standing relationship between *Frank* and Slabbed.

14. The Defendant Douglas Handshoe was also an information content provider for third-party web sites, including but not limited to web sites frankmagazine.ca, Timothy Gillespie's "South Coast Today," "Gulf Coast Rising," "ProjectNOLA," and "New Orleans Ladder."

15. Defendant Handshoe published his defamatory and infringing Internet, facsimile, and email publications about the plaintiffs in Nova Scotia as well as Canada in general, and had a Canadian audience.

16. Works infringing the Plaintiffs' copyright were telecommunicated by the Defendant from Mississippi to servers in California and from there into Canada where they were downloaded from the Internet.

17. In his publishing activities, Handshoe made use of Nova Scotian and Canadian source material, including Government of Nova Scotia resources such as the Nova Scotia Property Records Database and Nova Scotia Supreme Court files, personal informants resident in Nova Scotia and Canada (such as disgruntled former Trout Point Lodge employee Joyce Case-Harlow), as well as information from Nova Scotia-based publications such as the South Coast Today web site, *Nova Scotia Open the the World* magazine, the *Chronicle-Herald* newspaper, the *Globe & Mail* newspaper, michaelcoyle.ca web site, and *Frank* magazine.

18. Handshoe published on Slabbed on Nova Scotia topics besides the Plaintiffs, including racism alleged in the Shelburne, NS, mayoral race in 2012, the Royal Canadian Mounted Police, as well as the loss of air service between Maine, U.S.A. and Yarmouth, Nova Scotia, Canada in 2012.

19. Handshoe conducted business in Nova Scotia by engaging a "legal researcher" in the province over an extended period of time during 2011, 2012 & 2013 for purposes directly related to his commercial publishing activities. This "legal researcher" was Shelburne, Nova Scotia, resident Timothy Gillespie, publisher of the South Coast Today web site.

20. Defendant Handshoe and his blog Slabbed widely promoted Gillespie's commercial Nova Scotia web site. That web site, in turn, widely promoted the Slabbed blog and its publications relating to Nova Scotia and the Plaintiffs. This was a mutually beneficial relationship between Defendant in Mississippi and the commercial web site owner in Nova Scotia.

21. Defendant Handshoe sent emails in 2011 to Nova Scotia-based journalists including business reporter Bill Power of the *Chronicle-Herald* and Oliver Moore, Atlantic Bureau Chief of the

*Globe & Mail*. These emails contained words defamatory of the Plaintiffs and untrue statements of fact and/or implications.

22. Defendant Handshoe sent emails to the Plaintiffs in Nova Scotia in 2011, which contained untrue statements of fact.

23. Mr. Handshoe has voluntarily granted multiple interviews to a Halifax-based tabloid magazine (*Frank*) on the topic of alleged public corruption in Louisiana involving Nova Scotia rental properties as well as the Plaintiffs' civil actions. Starting in August, 2011, The magazine has repeatedly published about Mr. Handshoe in its pages and on its web site, which have also repeatedly directed its Canadian readers to the Slabbed blog, where infringing and defamatory publications occurred. The *Chronicle-Herald* has also published on Mr. Handshoe's press release targeted at Canadian media, which was intentionally sent into Nova Scotia by Defendant Handshoe in December, 2012.

24. Defendant Handshoe has solicited and received permission from Nova Scotia-based *Frank* magazine to republish the magazine's own copyrighted material on Slabbed, which in turn contained the copyrighted creative works of the Plaintiffs.

25. Most claims below stem mostly from publications (a) unequivocally made and read by 3rd parties in Nova Scotia; (b) made or discovered since February 6, 2013, or (c) from series of publications where the last publication in the series occurred on or after that date.

**Background & Continuous Republication**

26. Much of the factual history can be found in the published decision in 2012 NSSC 245, *Trout Point Lodge, Ltd., Vaughn Perret, and Charles Leary v. Doug Handshoe and Jane Doe (annemarieboudreaux@yahoo.com)*.

27. All of Handshoe's defamatory publications that formed the basis for the above NSSC final judgement remain in publication today, and the Plaintiffs hold the Defendant responsible for such continued already particularized publication and republication of defamation found by the

judge in her award of aggravated and punitive damages, and say that Handshoe is in blatant, public disobedience of 2 NSSC injunctions.

28. A concise background summary in necessary to understand some of the Defendant's Defamatory publications. In and leading up to January, 2010, the administration of popular but controversial Jefferson Parish, Louisiana, President Aaron Broussard was the target of a large U.S. federal criminal investigation as well as state ethics investigations. Several journalistic and official investigatory bodies were looking into alleged corruption in the Broussard administration and by Broussard himself.

29. Broussard had owned vacation property in Nova Scotia off the Trout Point Road, Kemptville, Nova Scotia, since around 1999, including rental properties that Trout Point Lodge, Limited, managed starting around 2001. Properties were either held by Broussard in the names of Nova Scotia-registered partnerships, or directly.

30. The fact that Broussard owned Nova Scotia properties had been public knowledge since 2001.

31. In covering the evolving Broussard scandal, the *Times-Picayune* and WVUE Fox 8 News of New Orleans misidentified Trout Point Lodge as belonging to Broussard on January 6, 2010, and on subsequent days.

32. Broussard was ultimately indicted by a Grand Jury for federal crimes including bribery, payroll fraud, theft of federal funds, and wire fraud, mostly involving the hiring of his wife for a government job she never performed. He reached a deal with the New Orleans U.S. Attorney (USAO) and plead guilty to 2 charges in September, 2012: cooking up a sham job for his wife involving theft of $28,158, and conspiring to take $66,000 in bribes from a Parish contractor in Louisiana. He plead guilty to these charges, was convicted and sentenced in early 2013.

33. Though the Defendant Handshoe repeatedly states otherwise in his defamatory publications, none of Broussard's federal criminal indictments or guilty pleas had to do in any way with the Plaintiffs or Nova Scotia.

34. The misidentification of Trout Point Lodge and any connected allegations or innuendo were subsequently fully retracted by the *Times-Picayune* in January, 2010, and again in April, 2011; and by WVUE Fox 8 News in February, 2012.

35. WVUE Fox 8 News in fact always insisted since 2010 that it never meant to identify Trout Point Lodge as being Broussard's property or to implicate the Plaintiffs in any wrongdoing. Defendant was aware of this fact.

36. In the face of the media retractions, Handshoe and others published by Handshoe continued to write on the topic of Trout Point Lodge and its owners on several occasions between January, 2010 and March, 2011, repeating false and defamatory implications that the Lodge truly belonged to Mr. Broussard and was involved in shady dealings.

37. In April, 2011, Defendant Handshoe incorrectly blamed the plaintiffs for having caused his new commercial web site "slabbed.org" to be shut down by his web host, which he viewed as part of a larger conspiracy involving the plaintiffs to silence his "free speech rights" and coverup a massive criminal conspiracy by "the powers that be," a theme that would continue in ensuing time.

38. In fact, it was the parent company of the *Times-Picayune*, media giant Advance Publications, that caused Handshoe's web host, GoDaddy, to drop him because he was infringing the *Times-Picayune's* copyright by commercially republishing in its entirety an article referring to the Plaintiffs from that newspaper.

39. As an aggravating factor, the Defendant has repeatedly published words referring to the personal plaintiffs as "girls" "bitches," "bottom boys," "wives," "perverted," and "queer fag scum," among other epithets. In the face of frequently using such words, Defendant says that he is not homophobic or motivated by the fact that he discovered Trout Point Lodge was openly advertised as a gay-owned and gay-friendly accommodation.

40. In his campaign to damage, Defendant Handshoe has published about the plaintiffs across the Internet, posting defamatory words referring to the plaintiffs on the Nova Scotia sections of the largest online travel-related community TripAdvisor (over 55 million viewers), on Twitter.com, on RipOffReport.com, on the legal affairs blog of Nova Scotia attorney Michael Coyle, on the Trout Point Lodge page of Yahoo! Travel, on nola.com, on the Nova Scotia section of the popular news comment web site Reddit.com, and on newspaper web sites such those of *The Telegraph* and *The Independent*, who were publishing positive articles about Trout Point Lodge.

41. Some of Handshoe's false allegations use real underlying source materials, including court filings made by U.S. prosecutors (USAO). However, Handshoe intentionally misrepresented the clear meaning and targets of these underlying sources in his publications.

42. The Broussard corruption investigation and prosecution is now decisively over. He has been convicted and sent the prison. The Plaintiffs have never been implicated in any crimes whatsoever, yet Handshoe persists unrepentantly with his false and defamatory allegations.

43. In particular, the USAO once alleged that a Louisiana company ("Nova Scotia Enterprises, LLC") became a vehicle by which Parish President Aaron Broussard enriched himself with monies from government contractors and vendors. However, though the purported purpose of the Louisiana company was to own Nova Scotia real estate, in fact it never held title to any real property in Nova Scotia, only Mr. Broussard did personally. U.S. prosecutors alleged that Broussard gained a large share in the company for very little monetary contribution, while other members of the company paid substantial sums for small shares. Prosecutors also alleged that a valuable promissory note was given to Broussard when he left the company. The federal Grand Jury never indicted Broussard on these allegations. They were only promulgated in September, 2012, after his indictment, by prosecutors who wanted to seek leave of the court to use evidence of alleged past misdeeds during his then-pending criminal trial. The prosecutor's motion, however, was never heard in court and the allegations remain unproved.

44. All Broussard's crimes alleged by the USAO had to do with share transactions and a promissory note in Louisiana, and had nothing to do with actual real estate holding or transactions actually occurring in Nova Scotia.

45. There exist no allegations from U.S. Prosecutors that the Plaintiffs ever involved themselves in any wrongdoing whatsoever. Nor has anyone else—other than the Defendant, members of the "Slabbed Nation," and those anonymously publishing on his blog—ever made such false allegations.

46. There exist at least 4 new stings in the false & defamatory publications of Douglas Handshoe since the January 30, 2012, evidentiary hearing on which the previous final NSSC judgement and damage award was based, and which Defendant Handshoe has repeatedly published after he was personally served with Notice of this proceeding.

47. The stings described below are defamatory, false, and injurious, but do not in any way constitute the totality of the false injurious publications of the Defendant since January 30, 2012. The Plaintiffs are not limiting their causes of action in defamation to these stings.

48. These are, first, the falsehood that the Plaintiffs were the long-term recipients of the criminal proceeds of what Handshoe claims was Broussard's criminal scheme. Being the recipients of ill-gotten gains is described by Handshoe variously as the Plaintiffs' participation in a criminal conspiracy, as participation in money laundering, and as participation in the funnelling of bribery (or kick-back) money to Nova Scotia, where it was hidden by the Plaintiffs. Trout Point Lodge and other businesses operated by the Plaintiffs were also falsely described by Handshoe as shell companies used for purposes of the criminal conspiracy and scheme, including money laundering.

49. This false allegation was republished in a 3rd party Louisiana lawsuit commonly referred to as the "Concrete Busters" lawsuit, then retracted by the Concrete Busters attorneys in March, 2013, attributed to Handshoe as the sole source of the information, and finally dismissed by the

U.S. federal district court. The Plaintiffs hold Handshoe responsible for any reasonably foreseeable republication of these defamatory words, as well as his publications stating the unproved allegations were true, which Handshoe has failed to retract after he received notice of their retraction by the lawsuit's lawyers.

50. A second false & defamatory sting is that an international criminal conspiracy existed (and exists), in which the Plaintiffs were active participants, to silence investigation of criminal wrongdoing by the Plaintiffs and their co-conspirators by journalists as well as "investigative bloggers," and most prominently Defendant Handshoe. The Defendant's false & defamatory storyline continues to say that Plaintiffs' past (and current) civil actions in Nova Scotia against the Times-Picayune, WVUE Fox 8, and the Defendant, were therefore criminally-motivated and fraudulent. Handshoe stated that other participants in the conspiracy included known one-time U.S. federal criminal target Frederick Heebe, an owner of the River Birch Landfill in Louisiana, as well as felon Aaron Broussard. He published that there was a coordinated conspiracy by members of Louisiana organized crime to identify and silence anonymous online commenters who were uncovering corruption, and that he was one of the victims of this conspiracy.

51. This allegation was republished in the Louisiana lawsuit mentioned above, then retracted, attributed to Handshoe as the sole source of the information, and finally dismissed by the U.S. federal district court. The Plaintiffs hold Handshoe responsible for any reasonably foreseeable republication of defamatory words, which Handshoe has also subsequently failed to retract.

52. A third defamatory sting, which was at times represented as being a component of the second, was that Broussard, in concert with the Plaintiffs and the River Birch Landfill owners, participated in a criminal scheme to unmask anonymous online commenters, including, but not limited to the Defendant and members of "the Slabbed Nation."

53. Defendant published the untruth that in 2011 Plaintiffs and Broussard used a Yarmouth, Nova Scotia law firm and legal contacts to illegally influence the presiding justice of the Supreme

Court in Yarmouth into granting orders depriving Handshoe and others of their civil rights and due process, as part of the international conspiracy to silence investigation and expose blogger identities. Handshoe published that the judge intentionally "looked the other way." This Yarmouth law firm, in addition, was alleged by Handshoe to have been used by Broussard in his criminal Nova Scotia real estate dealings, including formation of companies used as criminal enrichment schemes. He published that the presiding judge had been part of that law firm at the time of these company formations & transactions, and also likely did work for the Plaintiffs. That is, Handshoe published the falsehood that judicial corruption perpetrated by the Plaintiffs and their lawyers resulted in the granting of specious orders by this Court to knowingly aid an international criminal conspiracy involving Louisiana organized crime. Handshoe also published that the presiding justice was the Plaintiffs' "dupe."

54. Alternatively, Defendant has repeatedly published that the Plaintiffs' intentionally misled the judge, including through perjury. False perjury allegations echoed those made about Plaintiff Leary when appearing before Justice LeBlanc in the long-settled litigation involving the Atlantic Canada Opportunities Agency (ACOA). These statements and implications are both false and injurious.

55. Finally, a fourth defamatory sting published by Handshoe was that the personal plaintiffs were members (shareholders) and managers of the Louisiana limited liability company (LLC) Nova Scotia Enterprises referred to above while it was engaged in the criminal activities alleged by U.S. prosecutors. Handshoe has repeatedly made this allegation *in filings he made within this proceeding* as well as well as unprivileged publications addressed to this Court since February 6, 2013. These allegations are false and injurious.

56. In sum, all of these defamatory stings, statements, and implications are false. The Plaintiffs do not know Frederick Heebe and have never been in business with—as opposed to doing business with—or in conspiracy with, Aaron Broussard or any company of which he was a member or

owner. Plaintiffs have never had anything to do with the ownership or management of Nova Scotia Enterprises, LLC. Plaintiffs have never conspired with judges or committed perjury.

57. Handshoe uses unreliable sources if he uses any sources at all, intentionally misrepresents legitimate primary sources, makes inconsistent allegations over time, and fails to fulfil basic tasks of responsible communication or journalistic enquiry before making publication, not only about the Plaintiffs, but third parties as well. Handshoe is highly prone to conspiracy theories.

58. Handshoe has since January 30, 2012, republished the following threat, originally made on September 14, 2011:

> I'll add here in case it is not self evident that I have built complete dossiers on all the players in this social group and I intend through time to roll out each and every one in excruciating detail as long as the lawsuit in Canada is an outstanding issue for Slabbed. The reason for this is that this band of gay men act as a unit that will also scatter like cockroaches when the heat is applied.

59. He has also stated: "I have 425,000 reasons to leave no stone unturned and yes Virginia I intend to turn every one to see which cockroaches are still hiding" (August 1, 2012) and "I have 425,000 reasons to follow the trail in its entirety and frankly I'm content to let the aftermath sort itself out." (August 12, 2012).

60. Handshoe has continued since Justice Hood's judgement to characterize the personal Plaintiffs as "perverted" due to their sexual orientation, as seen below.

**Statement of Facts Establishing Causes of Action in Defamation**

61. The Plaintiffs say that the Defendant, Douglas Handshoe, published multiple false and defamatory statements, detailed below, concerning the plaintiffs; that these were published in an unprivileged fashion to a third party; that Mr. Handshoe was at a minimum negligent, and in most cases intentional or wildly reckless in making publication; that he published with actual malice, in reckless disregard for the truth; and that the defamatory statements were defamatory *per se*, immediately actionable upon their publication.

62. The Plaintiffs never interjected themselves—nor were they involuntarily interjected by anyone except the Defendant—into the public controversy surrounding Aaron Broussard and Jefferson Parish corruption, or any public controversy whatsoever. The Plaintiffs have never publicly commented on the Broussard scandal. The Plaintiffs do not know Douglas Handshoe.

63. Mr. Handshoe has defamed the plaintiffs, including multiple false accusations of criminal activity, in contravention of the Nova Scotia Defamation Act, as amended, on which the Plaintiffs rely. The Defendant published false and unprivileged words that exposed the plaintiffs to hatred, contempt, ridicule, or obloquy; that cause them to be shunned or avoided; and which have a tendency to injure them in their occupation or profession.

64. For many of the publications, readers would and did perceive a defamatory meaning without extrinsic aid beyond their own intelligence and common sense, and these publications are libelous *per se*.

65. These include, but are not limited to, accusations of perjury, grifting, graft, fraud, lying, racketeering, filing frivolous and/or SLAPP lawsuits, being libel tourists, being libel terrorists, being bag men and "nefarious," litigiousness, money laundering, funnelling of bribes, funnelling of illegal kickbacks, money laundering for drug cartels, involvement in organized crime, involvement in judicial corruption in Nova Scotia, and involvement with the corrupt practices of Louisiana politicians including the implementation of kick-back and "pay to play" schemes.

66. The Defendant also published words capable of defamatory meaning through implication and/or in a series.

67. The Defendant at numerous times published that his purported investigations and publications are a search for the truth and evidence, and that what he is publishing is the truth, not comment, parody, or opinion. He also repeatedly publishes that he is media and a journalist, and that his publications about the Plaintiffs are reporting.

68. Defendant made defamatory publications within the instant judicial proceeding in Nova Scotia as well as contemporaneous with this judicial proceeding on the Internet, in order to injure the Plaintiffs and their reputations in an effort to extra-legally stop or impair their ability to prosecute a well-focused summary proceeding for copyright infringement against him.

69. Defendant Handshoe published most, if not all, of his submissions or letters to this Court in this proceeding on his Slabbed blog.

70. Defendant Handshoe nas made publication on various occasions, and in most cases each publication contains numerous defamatory utterances, each of which is a distinct cause of action.

71. Publication 1: On May 6, 2013, during a period of time in which he had asked for and been granted by the NSSC additional time to file a copyright jurisdiction motion in this proceeding, Defendant Handshoe produced and published a video on YouTube at the URL http://www.youtube.com/watch?v=M_pc4bjaLno.

72. In that video, Handshoe visually created the implication that the Plaintiffs were part of the Aaron Broussard criminal scandal, were involved in criminal activities with Broussard such as those alleged to have been conducted using Nova Scotia Enterprises, LLC, and that Trout Point Lodge was recipient of criminal monies and a place of criminal activity. Handshoe referred to and pictured Broussard as the "Goatherder in Chief" and the Plaintiffs as "the goatherders," implicating the criminal conspiracy he published on elsewhere. In short, the video visually encapsulated the defamatory utterances and stings particularized below as well as those described in 2012 NSSC 245..

73. Handshoe again violated in the same May 6, 2013, YouTube video Plaintiffs' copyright in the creative works—photographs—identified in this Statement of Claim by publishing them on YouTube.

74. Publication 2: On May 10, 2013, during a period of time in which Defendant Handshoe had

    asked for and been granted by the NSSC additional time to file a motion in this proceeding,

    Handshoe published the following comment at the URL http://michaelcoyle.ca/huge-

    defamation-damages-awarded-to-nova-scotia-businessmen-against-us-blogger-for-cyber-libel/,

    a Nova Scotia-based legal web site publishing on Nova Scotia legal topics, telecommunicated to

    and from Nova Scotia. Publication took place in Nova Scotia starting on May 10, 2013:

    > Mr. Coyle:
    >
    > This blog post trumpeting a default judgment against me via allegations concocted out of
    > whole cloth is materially false and part of a coordinated campaign to cover the
    > involvement of the plaintiffs in a scheme United States prosecutors would term evidence
    > of other crimes and punish to those that exposed the scandal. Your promotion of it
    > indicates a level of involvement that rises to that as active conspirator with the plaintiffs
    > to deprive me and several other of me web site commenters of our constitutional rights
    > to free speech under the color of law. I am putting you on notice that you will either
    > remove this post and apologize or you will run the very real risk of being included as a
    > co defendant in a coming Racketeering lawsuit against the Lodge and its American
    > owners that will be filed in the US.
    >
    > Do not ignore this comment as the next communications on this matter will come from
    > my US based lawyers.
    >
    > Doug Handshoe
    > Slabbed New Media LLC
    > 228-284-0004

75. As of May 10, 2013, the Plaintiffs did not know Michael Coyle and had never communicated

    with him. Mr. Handshoe subsequently sued Mr. Coyle for defamation in Hancock County,

    Mississippi, Circuit Court and then entered default against him on July 15, 2013.

76. Michaelcoyle.cas was and is hosted on servers located in Markham, Ontario, Canada, and is

    read in Nova Scotia among other places.

77. **Truth**: The allegations contained in the Plaintiffs' previous defamation lawsuit against

    Defendant Handshoe were not false. Michael Coyle's publication on the judicial proceeding and

    decision known as 2012 NSSC 245 was privileged and accurate. Michael Coyle's privileged

    legal analysis of Justice Hood's published decision was not part of a civil conspiracy, or a

criminal conspiracy involving the Plaintiffs. There was no scheme to punish the Defendant or others, and there was never any criminal scandal involving the Plaintiffs. The Plaintiffs were never mentioned by United States prosecutors as being part of a criminal scheme, or at all. Neither the Plaintiffs nor Nova Scotia lawyer Mr. Coyle have ever attempted to deprive the Defendant of constitutionally-guaranteed rights, which would be an act of moral turpitude. The Plaintiffs have never engaged in racketeering. All of this is pure, false conspiracy theory and defamatory of the Plaintiffs, causing substantial damage to their reputations in Nova Scotia and elsewhere.

78. Publication 3: In late July, 2013, Plaintiffs discovered that on March 9, 2012, Defendant Handshoe caused to be updated a "Complaint Review" publication originally posted on RipOffReport.com on September 18, 2011, under the pseudonym "Kingfisher." The original post published about the Plaintiffs: "Beware of this Nova Scotia travel scam." The March publication stated:

> These American scammers at Trout Point Lodge have filed at least 5 SLAPP suits in Nova Scotia against various media outlets that have reported on the link between the Lodge and a massive federal investigation in Louisiana involving some of the Lodge's investors. It is clear the owners of the Lodge, 3 gay men from Louisiana with a history of perverted behavior, have no tolerance for other viewpoints as illustrated by the silly no disclosure statement they make their guests sign.
>
> Travelers from the US should be very wary of Trout Point Lodge due to the protensity of the owners to sue people expressing their opinions and news outlets doing legitimate reporting on the Lodge's connection to the scandal in New Orleans.

79. These fake "reviews" and false statements on RipOffReport.com were intentionally designed by the Defendant to injure the Trout Point Lodge business and appear prominently when travelers, including those from Nova Scotia, search for legitimate Trout Point Lodge accommodation reviews using the Internet. The RipOffReport web site appears prominently when one searches for Trout Point Lodge reviews.

80. **Truth**: The Plaintiffs are not scammers and Trout Point Lodge does not scam its guests, but provides a level of comfort and service for which it has an established reputation. A scam is a dishonest way to make money by deceiving people. To scam is to deceive and take money from someone, to defraud. These publications are statements of fact. The Plaintiffs have not filed strategic lawsuits against public participation (SLAPP) against anyone. No one besides the Defendant or those republishing his words have reported on a link between Plaintiffs and criminal investigations, as no such links actually exist. The personal plaintiffs are not perverted and do not exhibit perverted behaviour; being gay is not perverted or an indicator of perverted behaviour, except in the homophobic mind of the Defendant. Defendant is again publicly equating being gay with perversion and moral turpitude, which is false, defamatory and actively encourages hatred and discrimination. The Plaintiffs have no propensity to sue people over their expressions of opinion or to damper free speech, and have not filed 5 lawsuits against media outlets. Free speech rights do not extend to defamatory publications. There is no legitimate news reporting on the Plaintiffs' connection to the criminal scandal in New Orleans because there is no such connection. This is all false, and would tend to lower the image and reputation of the Plaintiffs, including the Trout Point Lodge business, in the eyes of their community as well as the traveling public.

81. Publication 4: In February, 2013, Defendant Handshoe faxed a letter dated February 6, 2013 (the day he was personally served with the originating Notice in this proceeding) to Nova Scotia. It was incorrectly addressed to Justice "Leon Muise" of the Supreme Court of Nova Scotia that was received and read by court staff in Yarmouth, Nova Scotia. It was therefore published in Nova Scotia in February, 2013. Handshoe later published the letter on Slabbed in February, 2013, where it remains in publication on the date of this filing, and from where it was downloaded and published in Nova Scotia.

82. In May, 2013, Defendant Handshoe included the same letter as an exhibit to his affidavit filed by both facsimile and via courier with the NSSC as part of a Notice of Contest in the instant proceeding on or around May 20, 2013. The contents of the exhibit contained in the Handshoe affidavit are public, and the February 6 letter was therefore republished by Handshoe in new forms in May, 2013, in Nova Scotia and subsequently.

83. In that letter, dated February 6, 2013, Defendant Handshoe published the following false & defamatory statements and implications:

84. Handshoe published the false implication that the Federal Bureau of Investigation (FBI), part of the United States Department of Justice, had contacted him with concerns that the Plaintiffs and/or their criminal co-conspirators had "hacked" his blog Slabbed.

85. Mr. Handshoe published the falsehood that the Plaintiffs managed "an entity" that U.S. prosecutors identified as being part of an "elaborate bribery scheme," referring to Nova Scotia Enterprises, LLC.

86. Defendant Handshoe published the falsehood that a U.S. federal judge had stated that the lawsuit by Trout Point Lodge against Louisiana Media Company, among other lawsuits, consisted of "libel tourism" and was a Strategic Lawsuit Against Public Participation.

87. Handshoe falsely accused Charles Leary of submitting "perjured affidavits" in the Louisiana Media lawsuit, and of manipulating the court's process to invade the privacy of third parties and to deny them of due process.

88. Mr. Handshoe published the falsehood that the Plaintiffs had engaged in fraud and deception.

89. Mr. Handshoe published the falsities that the FBI had told him to notify the Nova Scotia court about "fraudulent actions," and that he was "actively cooperating" with the FBI to bring criminal charges against the Plaintiffs, implicating that the FBI was also engaged in this endeavor.

90. Handshoe published the further falsehood that the Plaintiffs are "dishonest litigants."

91. Handshoe published the mistruth that the Plaintiffs had used the Nova Scotia courts "in furtherance of an American organized crime conspiracy," referencing a now retracted and dismissed civil lawsuit mentioned above brought in Louisiana by Waste Remediation of Plaquemines, Inc.and Concrete Busters, LLC against Frederick Heebe and the River Birch Landfill.

92. **Truth**: Handshoe exhibits a pattern of attempting to extra-judicially influence the courts in both the United States and Nova Scotia through his Internet publications and other utterances, and this letter is an example of such conduct. The Plaintiffs have never attempted to hack the Defendant's blog, either themselves or in conspiracy with others, which is a crime. On information and belief, the FBI has never told anyone that the FBI suspects the Plaintiffs of involvement in hacking, a crime. The Plaintiffs have never managed any company or other entity involved in a bribery scheme or identified by U.S. prosecutors as allegedly being part of a bribery scheme. The Plaintiffs have never had any ownership or management role in Nova Scotia Enterprises, LLC. No judge has ever identified the Plaintiffs' civil defamation lawsuits against Louisiana Media Company or anyone else as "libel tourism" or a Strategic Lawsuit Against Publication Participation. Charles Leary has never committed perjury and has never abused court process to invade privacy or deprive others of due process. The Plaintiffs are not dishonest litigants and do not engage in fraud and deception. On information and belief, the FBI is not working on bringing criminal charges against the Plaintiffs. The Plaintiffs are not part of organized crime, and have never used Nova Scotia courts in furtherance of an international organized crime conspiracy to silence legitimate investigation of wrongdoing. All of this is *prima facie* defamatory of the Plaintiffs and untrue.

93. Publication 5: On December 20, 2012, Defendant Handshoe published a "press release" and sent it by email to numerous media outlets, including prominently travel publications or travel sections of major newspapers, throughout the United States and Canada, including the Halifax

*Chronicle-Herald.* This was an intentional act designed to injure the reputation of Trout Point Lodge. The Handshoe press release was published and read in Nova Scotia.

94. Particularly, that press release was published in Halifax, Nova Scotia, where it was read by editors and reporters working for the *Chronicle-Herald.*

95. In that publication, Handshoe made numerous false and defamatory statements about the Plaintiffs.

96. Handshoe referred to the plaintiffs as forum shoppers and libel tourists; he published that the judgment in 2012 NSSC 245 was an "outrageous instance of libel tourism." Both forum shopping and libel tourism imply the Plaintiff's involvement in unethical acts. Libel tourism is defined as a type of forum shopping for meritless defamation claims.

97. Handshoe published the falsity that Trout Point Lodge was "a Nova Scotia luxury resort property linked to a major political corruption scandal in New Orleans."

98. Handshoe falsely implicated that Broussard and his former wife who had "pleaded guilty to several counts of fraud and other charges surrounding the scandal" were owners of Trout Point Lodge.

99. Handshoe falsely implicated that Plaintiffs were involved in "corruption affecting millions of citizens in my state and region and hundreds of millions of tax dollars."

100.    Handshoe published the falsehood that the Plaintiffs had harassed and were harassing him through their civil lawsuit against him, implying a nefarious purpose behind the lawsuit, and when read in series with his other publications, implicating them in an international criminal conspiracy to silence investigation and unmask anonymous investigative bloggers.

101.    Publication 6 (a series): As part of a series of false & defamatory publications that relate to the Nova Scotia judiciary, on February 24, 2012, Handshoe published in a blog post on Slabbed:

There are a couple more things about this whole deal that need further fleshing out. The first is the Billy's Hill Trail Society, which we tackled in several posts including this one currently in the goggle cache. I initially noticed the membership listed on the society's website, coincidentally controlled by Leary and Perret, listed Aaron Broussard along with Leary, Perret and the Lodge as officers in the organization. The surname of one of the other officers caught my attention too, that of Ginette Muise, who is listed as being from North Kemptville. Our readers may remember the Judge in the Fox 8 case was Pierre Muise of Quinan community less than 10 miles from Kemptville. In fairness to the Muises mentioned, a reader in Nova Scotia pointed out to me that the Muise surname is kinda like Boudreaux in Louisiana as there are lots of them. That interesting tidbit aside, Pierre Muise's legal pedigree includes a stint with Pink, Macdonald, Harding from 1998 to 2001. Martin Pink was the Lodge's lawyer back in the day which means Muise has most likely known the Goatherders for some time, perhaps even doing some legal work for them way back when.

102.    On March 1, 2012, Handshoe published the following post on Slabbed:

Let's circle the following Canadian Barrister's name folks: <u>Martin Pink</u>. Southern Nova Scotia is a tiny place from a population standpoint so it in inevitable certain names from the libel tourism cesspool begin to repeat themselves. With that said <u>Timothy Gillespie has a must read up on the South Coast Today</u> about Aaron Broussard, the Fox 8 case and Martin Pink, for whom Justice Pierre Muise once worked and who also has represented the Goatherders in the past.

Pink is also the registered agent for Kempt Wilderness Lodge Services, one of Broussard's Canadian companies connected to the corruption scandal in Jefferson Parish. IMHO the SCT is small town journalism at its finest, especially given the archaic system of defamation laws under which the media in Canada must navigate.

103.    On January 25, 2013, Defendant Handshoe published the following comment on

Slabbed:

I do not think Fred Heebe's witch hunt was confined to NOLA.com and it is a certainty blogs like AZ, Slabbed and others would be of interest to the gang at River Birch.

We also know the Goatherders submitted perjured affidavits in Canada in the defamation suit between Fox 8 and Trout Point Lodge to obtain the IP addresses of 4 Slabbed commenters. If we take the allegations contained in the Concrete Busters RICO suit against River Birch as true regarding a connection between Heebe and Goatherders then that unidentified man pictured at NOLA.com is joined by myself and 3 others commenters in Unslabbed, Whitmergate and Telemachus.

Additionally the Goatherders tried to obatin the IP address for Novelle Ecosse, a former Slabbed commenter, via the Fox 8 case but since **the Judge Muise could no longer pretend he did not know who I was** he would not schedule a hearing without my being noticed, which was the last thing the Goatherders wanted to do.

104.     On April 3, 2013, Handshoe published a post on Slabbed entitled "Let's recap a thing or two and tie a few loose ends together on the criminal demise of Aaron Broussard." He "tagged" this post with the following: "Bribery, Cerro Coyote SA, Charles Leary, Daniel "Danny" Abel, Justice Leon Pierre Muise, Nova Scotia Enterprises LLC, Plaquemines Parish President Billy Nungesser, Trident Holdings of Nova Scotia, Trout Point Lodge Limited Perret Leary v Louisiana Media Company LLC, USA v Broussard, Vaughn Perret."

105.     In that post, he wrote of documents that "unequivocally demonstrated Broussard's intimate involvement with business ventures partially owned and managed by Charles Leary, Vaughn Perret and Danny Abel. All three of those guys are currently involved in litigation with me over my documenting their close connection Broussard and what federal prosecutors would later term evidence of other crimes in the Broussard prosecution." Defendant Handshoe continued to publish: "I mention this because V's first comment on that post also hits on a story out of Plaquemines Parish before it was a story. Here is the salient part:

> Now there is an a lot of Nova Scotia reference on the LA SOS and NS Province corporate database, there is:
> SCOTIA POINT, LLC – Abel etc.
> NOVA SCOTIA ENTERPRISES, L.L.C. – Broussard's work address
> NOVA SCOTIA, L.L.C. – oddly enough this involves a guy who sold a ton of land to LIFT the movie company that got busted for the LA film credit scandal, but none of the folks mentioned here
> TRIDENT HOLDINGS INC. OF NOVA SCOTIA – who knows what this is, again none of the folks mentioned here
> PUBLIC WORKS INVESTMENTS (NS)
> PUBLIC WORKS, INC. (LA)
> KEMPT WILDERNESS LODGE SERVICES (NS)

106.     Defendant Handshoe concluded: "V aka Telemachus was one of the Slabbed commenters deprived of due process by Charles Leary of Trout Point Lodge in Canada when he swore false affidavits before Nova Scotia Supreme Court Justice Leon "Pierre" Muise in late April 2011 in their SLAPP suit against Louisiana Media Company aka Fox 8."

107.    Plaintiffs say that the Defendant's reference to the "story out of Plaquemines Parish"

refers to the false, retracted and dismissed Concrete Busters and Waste Remediation of

Plaquemines lawsuit allegations, which originated with the Defendant and were republished by

the nola.com. Plaintiffs further say that reference to Public Works Investments indicates a

company registered for Broussard by Pink MacDonald Harding.

108.    On April 4, 2013, Handshoe published the following comment on Slabbed:

> It has been suggested that Ginette Muise of the Billy Hills Trails Society is closely
> related to Justice Muise, the Nova Scotia Judge that presided over the Leary and Perret's
> SLAPP suit against Fox 8.
>
> The way these suits Leary and Perret filed all smacked of **homecooking**, complete with
> **Judges who went out of their way to look the other way** while Leary and Perret lied
> their way to specious court orders to dig dirt on US Internet commenters leads one to
> believe there is way more to this than meets the eye IMHO.

109.    On June 7, 2013, Handshoe published on Slabbed a letter he had sent to Justice Muise in

Nova Scotia in which he stated:

> I have noted Leary and Perret's continued efforts to deprive me of my civil rights to
> respond to their dubious allegations levied under the US law known as the DMCA in
> Canada. I also note **your court was once used by Leary and Perret before to deprive**
> **myself and at least 4 other US Citizens of their civil rights in the Louisiana Media**
> **case and I have doubts you were unaware of their specious use of your courtroom**
> **for that purpose.**

110.    On August 1, 2013, at the URL http://www.slabbed.org/2013/08/01/yup-part-

14/comment-page-1/#comment-276415 Handshoe implicated that all businesses through which

Aaron Broussard owned Nova Scotia real property were in fact part of criminal enrichment

schemes, which would include, by reasonable implication, partnerships established by Pink

MacDonald Harding for Mr. Broussard between 1998 and 2001.

111.    On September 6, 2013, Handshoe published a comment on Slabbed at the URL

http://www.slabbed.org/2013/09/05/trout-point-lodge-vaughn-perret-and-charles-leary-remain-

repugnant-to-the-us-constitution/comment-page-1/#comment-316666:

As it turns out Muise evidently did both their and Broussard's legal work in NS before he landed his judgeship, which is disturbing as he certainly should have recused himself from the Fox 8 SLAPP suit, you know the one where Leary submitted perjured affidavits for purposes of invading the privacy of several of this website's commenters. Now the Goatherders claim both he and his niece, who formerly worked for them and Broussard over at the Billy Hill Trail Society are their witnesses. I'm thinking a 42 USC 1983 action may be just the ticket to bringing some sunshine to their specious use of the Canadian courts, who appear to have gone along with them willingly in these endeavors. Heck, **I had to threaten legal action to simply get a hearing date** per Justice Wrights instructions and it turns out Leary and Perret were hounding the Court Clerk to not accept my court filings.

They do not see it yet because they are not litigating to resolve a difference as much to inflict garden variety harassment upon me but their spleen venting, largely incoherent proposed amendments put me in a heads I win, tails you lose sort of position. Heck they are even inventing new torts. And then there are the histrionics as Perret is seemingly on the verge of tears and/or shedding them at these hearings as Leary acts as attorney for the whole gang despite not being a lawyer (Perret is a licensed lawyer BTW). Worth noting is Perret pulled his crying routine at the damages hearing back in January 2012 according to press reports.

112.     As of the date of this filing, Handshoe has not retracted or removed any of these

publications from Slabbed.

113.     The Plaintiffs say that read in series, Handshoe's publications create the false implication

that they, in concert with Aaron Broussard, Frederick Heebe, and Martin Pink, "home cooked"

Handshoe through a conspiracy involving the Nova Scotia judiciary intentionally ("going out of

their way"; "going along with them") "looking the other way" so that court orders were

fraudulently obtained to unmask anonymous bloggers; that the court administration was

intentionally biased against him; that the presiding Justice in Yarmouth worked for Martin Pink

(partner in Pink MacDonald Harding) while he worked for Aaron Broussard and the Plaintiffs,

including real estate transactions & company formations done by Pink MacDonald Harding that

were part of an ongoing criminal enterprise, and that close relatives of the presiding Yarmouth

justice had societal links to Aaron Broussard and the Plaintiffs, which were nefarious. Handshoe

also repeats homophobic and misogynistic untruths about Plaintiff Perret. "42 USC 1983" refers

to U.S. Federal legislation regarding deprivation of rights by United States government actors of any level of government, or those acting under the colour of such law.

114.    **Truth**: Martin Pink was never part of the law firm Pink MacDonald Harding. According to public records known to the Defendant, Martin Pink only became Registered Agent for Broussard's former company Kempt Wilderness Lodge Services on October 27, 2011, after Broussard had left the partnership. The Plaintiffs have never engaged in a criminal conspiracy to "home cook" the Defendant in Nova Scotia or to unmask Internet commenters, and have never improperly influenced or sought to (extra-judicially) influence a judge, which is false and *prima facie* defamatory. On information and belief, Justice Pierre Muise never did legal work for the Plaintiffs or for Aaron Broussard while he worked at Pink MacDonald Harding as an associate. Companies and partnerships formed by the Plaintiffs with the aid of Pink MacDonald Harding were never used for nefarious purposes. Plaintiffs have never criminally conspired with any judge or anyone in the courts, and there was no bias against Mr. Handshoe by the court administration at the behest of the Plaintiffs. The Defendant, who was then publishing anonymously, was in fact given notice of the Nova Scotia Court Order by his web host Automattic, Inc. before the web host acted in June, 2011, but Handshoe did not to respond or otherwise object. His rights were never violated by the Plaintiffs, or anyone. Neither the Plaintiffs nor the Nova Scotia courts are United States government actors, nor did they ever act under the colour of United States law in any way affecting the Defendant's rights.

115.    Publication 7: On October 4, 2012, an attorney filed an amended claim in the the Civil District Court for the Parish of Orleans, Louisiana in the proceeding captioned *Concrete Busters of Louisiana, LLC & Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, Albert J. Ward, Jr., River Birch Incorporated, and HWY 90, LLC*.

116.    This was during the time when a federal judge in Mississippi was considering enforcement of the NSSC money damages award against Defendant Handshoe. The Concrete

Busters lawsuit's amendment was widely publicized in mainstream media due to the efforts of the Defendant.

117.    That amended claim contained allegations that Aaron Broussard was a co-conspirator in criminal corruption and racketeering using a lengthy list of companies, including the Louisiana company Nova Scotia Enterprises, LLC as well as Nova Scotia companies, including Public Works Investments, Kempt Wilderness Lodge Services, and Trout Point Lodge, Limited.

118.    The amended claim was widely published the same day by nola.com—the web site of the *Times-Picayune*—and before that by Defendant Handshoe on Slabbed. Handshoe has repeatedly referred to his connections or informant relationship with *Times-Picayune* reporters as evidence of his journalistic credentials, including with the reporter who published the article on the amended "Concrete Busters" lawsuit. This reporter has also published comments on Slabbed.

119.    This article and the amended claim were downloaded and read in Nova Scotia by persons other than the Plaintiffs.

120.    As admitted by the Concrete Busters lawyers, using Handshoe's Slabbed blog as its sole source, that amended claim published the falsity that Trout Point Lodge and the personal plaintiffs' business, Cerro Coyote, S.A., were involved in criminal racketeering involving multimillion dollar waste disposal contracts by that lawsuit's named defendants (Frederick R. Heebe, Albert J. Ward, Jr., River Birch Incorporated, and HWY 90, LLC) and other persons including then-admitted felon Broussard.

121.    That amended claim published the falsity that Trout Point Lodge and Cerro Coyote were criminal "shell corporations . . . owned and/or controlled by the Defendants and/or their co-conspirators." A shell corporation is defined as a corporation without active business operations or significant assets. This allegation came from the Defendant and his blog, and was subsequently republished by him in an unprivileged manner.

122.     That amended claim published the utter falsity that Trout Point Lodge and Cerro Coyote

truly functioned as a single business entity with other shell companies controlled by criminal

co-conspirators including federal criminal target Heebe and admitted federal felon Broussard.

This false allegation originated with the Defendant and his blog, and was subsequently

republished by him in an unprivileged manner.

123.     At paragraph 189 of that amended claim, in a section captioned "Fraudulent

Misrepresentations and Concealment," further injurious falsehoods were published:

> Co-conspirators, associates and/or agents of Defendants prosecuted SLAPP lawsuits
> against the Times-Picayune, Fox 8 News, Anne-Marie Vandenweghe, and bloggers, in
> foreign countries that lack the same constitutional protections of free speech as
> guaranteed by the laws of the State of Louisiana and the United States of America, in an
> effort to silence investigation and to conceal the acts of the defendants and their co-
> conspirators, committing libel tourism to thwart the protections of, and in contravention
> of, the First Amendment to the United States Constitution, the Federal SPEECH Act 28
> U.S.C. 4104-4105, the Louisiana Rachel's Law Louisiana Code of Civil Procedure
> Article 2542, and the Louisiana American Laws for American Courts Act La. R.S.
> 9:6000. Said suits include the suit: entitled Trout Point Lodge, Ltd. A Nova Scotia
> Company, Vaughn Perret, and Charles Leary v. Doug K. Handshoe and numbered 12-cv-
> 90LG-JMR on the docket of the United States District Court for the Southern District of
> Mississippi; and, Trout Point Lodge, Ltd. A Nova Scotia Company, Vaughn Perret, and
> Charles Leary v. Louisiana Media Company, LLC and numbered Yar No 328248 on the
> docket of the Supreme Court of Nova Scotia.

124.     The Concrete Busters attorneys admitted that paragraph 189 repeated and republished

many prior false & defamatory stings and implications first published by Defendant Handshoe.

125.     On February 19, 2013, Handshoe published on Slabbed a comment that contains

falsehoods: "I have also concluded the allegations contained in the Concrete Busters amended

complaint regarding coordination between the goatherders and Team Heebe are factual. I think

the Trout Point libel suit against the Times Picayune was pre-planned and that the planning

involved the former Goatherder in Chief. I believe it was fed to Paul Rioux and Rich Rainey for

the express purpose of defamation libel tourism. And I think I can lay it all out in a post that

will make believers of the remaining skeptics."

126.     On the same day, Handshoe published on Slabbed the following false statements: "My FBI contact indicated to me if Leary pulled this in a U.S. courtroom he be arrested and charged with multiple felonies. The way goatherders make use of the judicial systems in two countries to perpetrate their misdeeds is downright Machiavellian. The fact that they seem to excel in courtrooms in Canada is very telling."

127.     **Truth**: The Plaintiffs have never done anything that would subject them to being arrested and charged with federal crimes in the United States, including felonies. The Plaintiffs have never abused or made misuse of any judicial system and are not Machiavellian in perpetrating misdeeds. These statements and their direct implications are false and defamatory. The judicial system in Canada has not been unusually easy on the Plaintiffs or been involved with them in criminal conspiracies by intentionally "looking the other way," which is the implication of Handshoe's series of publications and statements.

128.     In March, 2013, and on July 18, 2013, Defendant Handshoe encountered credible information establishing that the Plaintiffs had no role in Nova Scotia Enterprises, LLC. or any other entities involved in criminal conspiracies and racketeering. Handshoe never had any basis for asserting the Plaintiffs management or ownership of Nova Scotia Enterprises or involvement in racketeering. Even in the face of evidence to the contrary, Handshoe has never retracted his allegations subsequent to receiving the true information.  The allegations in the Concrete Busters lawsuit were not true, and in a vicious cycle of publication and republication, they themselves admittedly emerged of information on Slabbed falsely concocted by Defendant Handshoe. The allegations have been retracted and dismissed, and someone with internal knowledge of Nova Scotia Enterprises has denied the Plaintiffs involvement in that company to a United States federal judge. Plaintiffs did not conspire with Frederick Heebe or others to silence investigation of wrongdoing or expose the identities of those purportedly investigating him. The Plaintiffs did not fraudulently use the Nova Scotia or Mississippi courts to silence

investigation, thwart legal protections, and conceal acts of criminal conspiracy and racketeering. The Plaintiffs have no nexus with the Defendants in the "Concrete Busters" lawsuit and did not conspire with them and others, including Broussard, to abuse the Nova Scotia judicial system or the Mississippi federal court. Their lawsuits were not against public participation on a matter of legitimate public interest. The Plaintiffs' ongoing effort to enroll their NSSC judgment in Mississippi is not fraudulent, criminal, or otherwise illegal, but rather is fully in accord with principles of comity, reciprocity, and the U.S. SPEECH Act.

129.     Publication 9: On April 29, 2013 Handshoe published on the "Slabbed Nation" Twitter account "troutpointlodgesucks," "Today at Trout Point, concocted evidence using false affidavits is their middle name . . ." with a hyperlink to a Slabbed blog post about the Plaintiffs. This false publications referred to the Plaintiffs.

130.     **Truth**: Plaintiffs have never concocted evidence or filed false affidavits. This is false and defamatory.

131.     Publication 10: On February 23, 2013, Handshoe published on the "Slabbed Nation" Twitter account "troutpointlodgesucks" "Slabbed examines the harassment of private citizens expressing their opinion on Jefferson Parish corruption: Part 2" with a hyperlink to a Slabbed blog post about the Plaintiffs. This false publications refers to the Plaintiffs.

132.     **Truth**: The Plaintiffs have never harassed anyone or tried to silence investigation of corruption.

133.     Publication 11: On January 11, 2013 Handshoe published on the "Slabbed Nation" Twitter account "troutpointlodgesucks," "Hi world. We'll bring you the best of libel terrorism straight from the banks of the Tusket River." This publication refers to the Plaintiffs.

134.     **Truth**: The Plaintiffs are not libel terrorists, which would tend to demean them in the eyes of their peers and community. Their defamation lawsuits were not instances of libel tourism or terrorism. Terrorism is a crime.

135.    The "followers" of the "troutpointlodgesucks" Twitter feed are Slabbed, "South Coast Today" of Shelburne, Nova Scotia, and "Patricia," a frequent Slabbed contributor whose identity remains anonymous.

136.    Publication 12: On February 7, 2013, Handshoe published a comment on Slabbed:

> Some of this will be in Part 3. If you are a corrupt politician in the U.S., what better place to hide the graft than a province in a country: 1. abusive defamation laws. 2. has latent anti-American sentiment dating to the late 1700s. And you have 2 self important, anal retentive assholes who were willing to run the ops. Leary is from northern New York so BF Nova Scotia is certainly more like home than Louisiana where the rest of them are from. For the media that SPEECH Act was a real game changer. To answer your question, in order to maximize the protections under SPEECH plus keep legal costs to a minimum, not answering the foreign defamation suit is the way to go IMHO. No telling how much money Tom Benson forked over to Stewart McKelvey for almost 2 years to parse the minutiae surrounding Leary and Perret's relationship with Broussard. That said, I'm grateful that Abel, Leary, and Perret, were hog enough to belly up at the libel tourism trough one too many times.

137.    **Truth**: There are numerous false and defamatory statements and implications here. Plaintiffs were not complicit in hiding criminal monies from a corrupt politician in Nova Scotia, or a scheme or operation to do so. This province was not intentionally chosen for such a scheme, or because Nova Scotia has abusive defamation laws or harbours anti-American sentiment. The personal plaintiffs are not self important, anal retentive assholes, which is an expression of fact. Plaintiffs did not have any relationship with Aaron Broussard other than an arms length one. The Plaintiffs are not libel tourists. (Neither is Plaintiff Leary from northern New York).

138.    Publication 13: On February 26, 2013, Handshoe published a comment on Slabbed in which he stated that the personal Plaintiffs had "coerced" "South Coast Today" publisher Timothy Gillespie into publishing a retraction and apology.

139.    **Truth**: The plaintiffs have never coerced Timothy Gillespie or anyone else into a retraction; coercion would mean the plaintiffs used extra-legal means and force to obtain a retraction, which is defamatory. When read as part of a series, this publication again implicates

their participation in a criminal conspiracy to silence investigation in Canada and the United States.

140.     Publication 14: On April 13, 2013, Handshoe published a comment on Slabbed that contains falsehoods: "Pretty good explanation Lockem. I'll ad the Canadian wing of the herd were Aaron Broussard's briefcase boys as media accounts exist that contend they introduced him around as their "silent partner."" The words "briefcase boys" refer to the personal plaintiffs.

141.     **Truth**: The Plaintiffs never introduced Aaron Broussard to anyone as their "silent partner," which implicates that Trout Point Lodge truly did belong to Aaron Broussard and was used in criminal activities or was truly a "shell company." Personal plaintiffs never acted at the behest of or in conspiracy with Aaron Broussard. These words and their implications are false and defamatory.

142.     Publication 15: On June 24, 2013, transmitted a facsimile from Mississippi to Nova Scotia, addressed to this Court, which was therefore published in Nova Scotia. This fax letter was unprivileged. Defendant had not submitted to the jurisdiction of this Court, had no standing to make this submission, and the letter was not sent in the ordinary course of this proceeding.

143.     In this publication, Defendant Handshoe made several false and defamatory statements concerning the Plaintiffs:

144.     Handshoe published that the topic of the Billy's Hill Trail Society was connected with official corruption in Louisiana's 2nd largest municipal unit, the "largest in the New Orleans metropolitan area." i.e. the Broussard and River Birch scandals. The Plaintiffs started the Billy's Hill Trail Society.

145.     Handshoe stated the falsehood that Aaron Broussard was on the Board of Directors of the Society.

146.     Handshoe published the false statement that Plaintiff Leary telephoned reporter Richard Rainey of the *Times-Picayune* in January, 2010, to leave a message on his voice mail denying

any connection between Trout Point Lodge and Aaron Broussard other than having property on the same road. The false implication was that this was part of a coverup of criminal wrongdoing uncovered by reporter Rainey. The truth is that Plaintiff Leary has never spoken with Richard Rainey.

147.     Handshoe falsely states that there were "inconsistencies in the written record" involving statements by the Plaintiffs, implicating the unravelling of a coverup of criminal wrongdoing.

148.     Handshoe falsely states that Plaintiffs' business partner Daniel Abel was Aaron Broussard's law partner and that they were partners in a law firm "Aaron F. Broussard, Daniel G. Abel, Attorneys at Law." Handshoe falsely implies this was the case during times relevant to Broussard's alleged crimes involving the Plaintiffs. Handshoe has a reasonable basis for doubting the veracity of this statement as Mr. Abel had previously sworn an affidavit filed with the U.S. federal court in Mississippi denying the existence of any such partnership. If this untrue statement were true, this statement would link together the business and economic interests of felon Broussard with the Plaintiffs, which is and was not the case.

149.     Handshoe published the falsehood that documents filed by the Plaintiffs in the Louisiana Media/Fox 8 litigation "electrified the local news community" because it demonstrated links between the Plaintiffs and the alleged but non-existent Broussard "bribery scheme" in which Handshoe falsely states the Plaintiffs were involved.

150.     Handshoe went on to published the falsity that information about the Plaintiffs altered the course of an FBI criminal investigation, echoing previously published falsehoods, and implicating the Plaintiffs in a criminal corruption scheme.

151.     Handshoe again falsely implicated the Plaintiffs in "Broussard's use of a Canadian property to enrich himself" from local vendors and contractors. This is false.

152.     Publication 16: On July 19, 2013, Defendant Handshoe transmitted by facsimile a letter to this Court in Yarmouth, Nova Scotia, which was therefore published and read in Nova Scotia.

153.     Handshoe also published this letter on the Slabbed blog of July 19, 2013.

154.     This unprivileged letter contains false and defamatory statements of fact, including the falsity that the Plaintiffs played "roles in one of many corrupt schemes involving their close business associate Aaron Broussard."

155.     Publication 17: On July 30, 2013, Defendant Handshoe sent by facsimile a letter to the office of Justice Wright of the NSSC in Halifax, Nova Scotia. The letter was published in Nova Scotia. The letter is and was not privileged and was not made in the ordinary course of this proceeding.

156.     In that letter, Defendant Handshoe made several false and defamatory utterances. First, he once again referred to Plaintiffs' civil defamation actions on matters of private defamation as SLAPP suits.

157.     Handshoe falsely referred to the Plaintiffs as paranoid, as the publishers of a defamation blog, and as "blatantly phony."

158.     Handshoe falsely accused Plaintiff Leary of practicing law without a license and all the Plaintiffs of intentionally violating the Nova Scotia Civil Procedure Rules in this litigation.

159.     Handshoe falsely accused the Plaintiffs of "defrauding the Province of Nova Scotia on a loan they ultimately used to build Trout Point Lodge instead of its intended purpose," which was a republication of his numerous prior false & defamatory allegations about the Plaintiffs and ACOA. This is a false accusation of a crime.

160.     Handshoe stated that Plaintiff Perret needed to "man up," which is a repetition of Defendant's prior false, hateful, homophobic and misogynistic statements regarding the Plaintiffs being "girls" and "bitches."

161.     Handshoe published the falsity that the Plaintiffs "were conspiring with a now imprisoned United States politician named Aaron Broussard to deprive Respondent [Handshoe] of his civil rights as well as being accessories to Broussard's criminal activity, including

identification of Broussard's property at the Trout Point Resort as a criminal enterprise by United States prosecutors."

162.     Handshoe went on in the letter to falsely accuse the Plaintiffs of perjury, of depriving U.S. citizens of their constitutional rights, and of invading privacy through "nefarious" activities.

163.     He falsely accused the Plaintiffs of actively aiding Broussard in coverup of criminal activity.

**164.     Truth:** As already articulated above, all of Handshoe's prima facie defamatory allegations in the unprivileged July 30, 2013, letter to this Court, published in Nova Scotia, are false.

**165.**     On August 6, 2013, the U.S. 5th Circuit Court of Appeal heard oral arguments from the Plaintiffs and Defendant Handshoe regarding the Plaintiffs' appeal of federal district court decision blocking enforcement of the Nova Scotia defamation money judgment in Mississippi. On August 7, 2010, Handshoe's attorney in that case made a written settlement offer to the Plaintiffs, which read, in part: "I am open to possible suggestions on resolution of the case prior to the time that the Court of Appeal has ruled. In that regard, I would suggest that your clients pay me a portion of my fees and costs and that Mr. Handshoe not publish anything about them in the future. Please advise as to your clients' position."

166.     Defendant Handshoe had previously published on Slabbed that he would never agree to stop publishing about the Plaintiffs, and that the permanent injunction issued by the NSSC was repugnant and violated his rights.

167.     On August 11, 2013, while this offer remained on the table, Defendant Handshoe published a new false and defamatory post about the Plaintiffs on Slabbed as well as a set of 4 consecutive tweets on the Slabbed blog Twitter account. Each tweet contained a hyperlink to the Slabbed blog, including to posts publishing the copyrighted creative works at issue here in an

infringing manner. The Slabbed blog Twitter feed had at the time multiple followers in Nova

Scotia and these tweets were therefore published in Nova Scotia.

168.     The text of these consecutive tweets contained false & defamatory words referring to the

plaintiffs: "To understand the SLAPP suits filed by Aaron Broussard's former business

associates…… http://shar.es/ywT6e"; "Aaron Broussard's "evidence of other crimes" & the use

of SLAPP suits by his business associates http://shar.es/ywBcV"; "About the chances that Trout

Point Lodge will be bankrupt within a year….. http://www.slabbed.org/2011/08/30/about-the-

chances-that-trout-point-lodge-will-be-bankrupt-within-a-year/#sthash.D2ET8jdX.uxfs … via

@Slabbedblog"; "Slabbed examines the harassment of private citizens expressing their opinion

on Jefferson Parish Corruption: Part 3 http://shar.es/yw9Dt ."

169.     **Truth:** Plaintiffs were never business associates of felon Aaron Broussard and were

never in business with—as opposed to doing business with—Mr. Broussard. Plaintiffs were not

part of an international criminal conspiracy to halt investigation and unmask anonymous

"investigative bloggers," which is the implication of the the tweets when read in context. Trout

Point Lodge is not nearing bankruptcy due to the untruth of its one-time reliance on proceeds

from felon Aaron Broussard's criminal enterprise. Trout Point Lodge never relied for its success

or growth on proceeds from Aaron Broussard, criminal or otherwise. In fact, in October, 2012,

Trout Point Lodge was named among Atlantic Canada's top 100 fastest growing companies by

*Progress* magazine. Trout Point Lodge's 35% growth rate ranked it No. 8 on the Fastest

Growing "Ones to Watch" list (characterized by having revenues under $1 million). Mr.

Handshoe knows this as he has published on Slabbed about the top 100 list. In addition, Mr.

Handshoe first published the post about Trout Point's impending bankruptcy in August, 2011,

however Trout Point Lodge has not failed financially while Mr. Broussard has been indicted,

convicted, and imprisoned; quite the opposite. The Plaintiffs say that publishing falsehoods

about the Lodge's near bankruptcy is designed to intentionally injure its prospective business from travellers in peak tourism season (August) and to injure its stellar business reputation.

170. In the August 11, 2013, post entitled "To understand the SLAPP suits filed by Aaron Broussard's former business associates one must understand what the posts reveal…….". Handshoe published: "And of course we've long been wise about the purpose of Nova Scotia Enterprises. How interesting that this post revealing it on Slabbed has become such a focal point in the continuing litigation. Stay tuned." Handshoe also published a document provided in evidence by Trout Point Lodge in the NSSC Louisiana Media litigation, taken from the court file in Yarmouth, Nova Scotia, by Handshoe's paid "legal researcher."

171. The Plaintiffs say that this post and the tweets were published in bad faith while Mr. Handshoe was making a settlement offer. The Plaintiffs further say that this post and its links to prior false and defamatory Slabbed posts was an attempt to influence the 5th Circuit Court of Appeal while its judges were deliberating. The "bankruptcy" post was brought up several times by the judges in oral argument. Read in series and in context, this Slabbed post republished false & defamatory implications that the Plaintiffs were involved in a criminal conspiracy and coverup with felon Broussard. This post republished the false & defamatory linkage of the Plaintiffs to Nova Scotia Enterprises, a company U.S. Prosecutors once alleged was used to criminally enrich Broussard. Handshoe also implicated that he will not in fact stop publishing false and defamatory allegations about the Plaintiffs, but will unabashedly continue even in the face of clear evidence his publications are untruthful.

172. **Truth**: As already stated above, the Plaintiffs have never been involved in a criminal conspiracy with felon Broussard; the Plaintiffs have never been in business with Broussard as distinguished from doing business with Broussard. Their civil actions were not and are not strategic lawsuits against public participation; there is no public interest in the Plaintiffs other than that created by Defendant Handshoe himself in an attempt to legitimize his defamations

after the fact. The Plaintiffs have never played any ownership or management role in Nova Scotia Enterprises, and only know that the deceased Roy d'Aquila was its purported representative.

173. On August 16, 2013, Defendant Handshoe filed a submission to this Court in which he stated that the personal plaintiffs have owned two failed businesses that failed "after taking a large taxpayer funded economic incentive" in both Canada and the United States.

174. Handshoe was referring to a repayable contribution received from the Atlantic Canada Opportunities Agency, a federal Crown corporation, and 2 research grants received from the U.S. Department of Agriculture (USDA).

175. On Janurary 7, 2013, Handshoe published a post entitled "I was given some grief for terming certain Goatherders as "Girls"…….." In this post, Handshoe accused the personal plaintiffs of having fleeced the U.S. Federal government in USDA Small Business Innovative Research (SBIR) grant applications by stating their business was woman owned and minority owned. This is an allegation of fraud.

176. On September 4, 2013, Handshoe republished the title and a link to the post on the Slabbed blog Twitter feed. By that time, any contradictory information about the grant applications had been corrected, but Defendant Handshoe continued to promote his false and defamatory publications.

177. **Truth**: The personal plaintiffs' previous business, Chicory Farm, was successful and acclaimed. In 1998 it was then sold to third parties, and did not fail. The plaintiffs did not state their business was minority owned or woman owned on 1994 and 1995 grant applications to the USDA, valued at the time at over $105,000. In fact, the USDA official in charge of the SBIR program performed a site visit to Chicory Farm. In addition, Chicory Farm won the inaugural Tibbetts Award from the U.S. Small Business Administration in 1996 due to it successful participation in the SBIR program and its business successes; this was a national honour.

Handshoe knows the allegation of fraud is untrue, but continues to publish this falsehood, which shows malice. The litigation involving ACOA was long ago amicably settled out of court; there is no pattern of the Plaintiffs taking money from federal funding agencies in the U.S. and Canada and absconding with the money after businesses fail, which is the implication of Defendant's multiple publications. This is all false and prima facie defamatory.

**Copyright Infringement under the Copyright Act**

178.     Handshoe operates his web site as a commercial enterprise.

179.     1. On or around November 4, 2011 the Defendant caused to be published on the commercial web sites slabbed.org and slabbed.wordpress.com an image of Trout Point Lodge that is the creative product of Vaughn Perret and the intellectual property of Trout Point Lodge, Limited. That creative work has Registration Number 1106084 with the Canadian Intellectual Property Office.

180.     The creative work was telecommunicated by Handshoe into Canada and Nova Scotia, where it was downloaded.

181.     The image was taken by Defendant from a web page where it is clearly stated on each page: "All Rights Reserved © 2008-2013 by Trout Point Lodge, Limited. All photographs are the original creative product of Vaughn Perret & Charles Leary unless otherwise noted." The image was stored at:

http://www.canticumhotels.com/sitebuildercontent/sitebuilderpictures/IMG_8454a.jpg and was legitimately transmitted to that location from Nova Scotia.

182.     Handshoe also at various times during 2012 and 2013 deep linked to the copyrighted image at issue, publishing it on Slabbed, including taking it from the commercially-powerful Expedia travel agent web site, where Trout Point Lodge is commercially promoted and from which it receives reservations and income. Expedia's Terms of Service explicitly prohibit deep linking to any material by anyone, including Defendant Handshoe, which Expedia material is

all copyrighted and used with permission. Plaintiffs provided the creative work to Expedia for limited use and lucrative commercial purposes.

183.     The image was published by the Defendant at the url http://www.slabbed.org/2012/01/29/hell-likely-be-remembered-here-for-being-a-part-of-the-gang-that-made-the-times-picayune-eat-its-own-big-toe/, and http://www.slabbed.org/tag/daquila-volk-mullins-contreras among numerous other places and instances of online publication.

184.     Vaughn Perret is the author of the work in question. He was at all relevant times a resident of Canada. He has moral rights in the image under the Copyright Act.

185.     2. On or around November 21, 2011, as well as prior, the Defendant caused to be published on the web sites slabbed.org and slabbed.wordpress.com an image that is the intellectual property of Charles Leary and was formerly the intellectual property of the Ashoka Foundation of Washington, D.C. That creative work has the Registration Number 1106083.

186.     There were numerous instances of infringing publication of this image by the Defendant on his web sites, including telecommunication and downloading of it in Canada and in Nova Scotia.

187.     It is a photograph of Charles Leary and Vaughan Perret while they were Delegates representing Trout Point Lodge to the 2010 Geotourism Summit at the National Geographic Society Headquarters.

188.     On information and belief, the author of the work in question was at all relevant times a citizen and resident of the United States of America.

189.     The United States of America is a "treaty country" for purposes of the Canada Copyright Act.

190.     In December, 2012, the Ashoka Foundation in writing assigned to the Plaintiff Charles Leary its rights generally, including the right of action, to the intellectual property in the work

published by the Defendant in accordance with the Copyright Act 13.4 and 13.6. The agreement stated that the works are the "exclusive intellectual property" of Plaintiff Charles Leary, and under the Copyright Act, Charles Leary is therefore the "owner" of the works.

191.    Charles Leary has successor rights over the copyright.

192.    The copyright to this image as a creative work is registered with the Intellectual Property Office, with the owner registered as Charles Leary and the author the Ashoka Foundation.

193.    3. In December, 2012 and at other times, the Defendant published an image at slabbed.org that is the intellectual property of Trout Point Lodge, Limited. It has the Registration Number 1106087.

194.    Defendant telecommunicated the creative work into Canada and Nova Scotia, where it was downloaded.

195.    From Nova Scotia, in February, 2012, the Plaintiffs provided this image to the *Toronto Star* newspaper. With Plaintiffs' permission, the Star subsequently published the image at its web site: http://www.thestar.com/news/canada/article/1125508—mississippi-blogger-must-pay-a-gay-couple-425-000-in-damages-nova-scotia-court-orders

196.    In 2012 and 2013, there were multiple instances of infringing publication of this image of Charles Leary and Vaughan Perret by Defendant on the blog Slabbed, including telecommunication of the creative work into Canada, where it was downloaded.

197.    The Defendant also published this creative work by deep linking to the commercial *Toronto Star* website on Slabbed. The Terms of Service of the *Toronto Star* web site prohibit anyone, including Defendant Handshoe from deep linking to its content, which is all copyrighted.

198.    The original photograph was taken by Trout Point Lodge employee Kara Crowell in the performance of her job and is the intellectual property of Trout Point Lodge. Kara Crowell was

at all times a resident of Nova Scotia.

199.     4. In December, 2012 and at other times, the Defendant published an image at
slabbed.org and slabbed.wordpress.com that is the intellectual property of Trout Point Lodge,
Limited. Defendant telecommunicated the creative work into Canada and Nova Scotia, where it
was downloaded. It is a photographic image of Vaughan Perret, Charles Leary, and Daniel Abel
by the Tusket River at Trout Point Lodge. It has registration number 1107205 with the Canadian
Intellectual Property Office and is the intellectual property of Trout Point Lodge, Limited.

200.     Rights to the work, including the right to action, were transferred in writing to Trout
Point Lodge by Marilyn Smulders. Trout Point Lodge has successor rights to the copyright.

201.     The creative work was authored by Marilyn Smulders, who was at all times a resident of
Nova Scotia. The photograph was initially published by Progress Media in *Nova Scotia Open to
the World* magazine prior to November, 2012, in a positive feature article about Trout Point
Lodge, meant to promote Trout Point Lodge and Nova Scotia as a successful, business-friendly
province. *Nova Scotia Open to the World* is and was published on behalf of the Government of
Nova Scotia.

202.     There were a multitude of instances of infringing publication of this creative work
featuring Charles Leary, Vaughan Perret, and Daniel Abel by Defendant on his Slabbed blog in
2012 and 2013, which will be proved at trial.

203.     In a video produced and created by the Defendant, and first broadcast on YouTube in
May, 2013, including telecommunication into Canada and Nova Scotia, where the video was
downloaded, the Defendant further infringed the copyright of the Plaintiffs in the above-named
creative works in the medium of video broadcast.

**Copyright Infringement involving 4 Creative Works**

204.     Section 3 of the *Copyright Act* grants the Plaintiffs the sole right as the owners of
copyright to produce or reproduce the works or any substantial part thereof in any material form

whatever.

205.     In particular, the Plaintiffs are the owners of the intellectual property rights to these four images, which are all creative works first published before November 7, 2012.

206.     The Defendant Handshoe was previously aware that the Plaintiffs owned the intellectual property rights to these images when he made Internet publications using these images, and telecommunicated these creative works where they were downloaded in Canada.

207.     The Plaintiffs and/or others notified DreamHost in writing that it was without permission or authority publishing material that was the intellectual property of the Plaintiffs or their predecessors, and asked it to remove this specific material from Internet publication.

208.     DreamHost in turn notified Defendant Handshoe and temporarily removed the infringing creative works from publication.

209.     Defendant Handshoe then transmitted counter notifications to DreamHost in which he swore under the penalty of perjury that removing the images from publication was in error, and that he had permission or legal authority to use the images on slabbed.org, which was untrue.

210.     The Defendant has not permanently removed the 4 specifically-identified works from worldwide, commercial publication on the Internet. The Defendant acted and continues to act in bad faith, and has in fact published them anew including while this proceeding for copyright infringement was underway.

211.     The images are published on the Internet in juxtaposition with defamatory words about the Plaintiffs, in public violation of 2 NSSC injunctions.

212.     The Defendant is in violation of provisions of the Canada Copyright Act, and has knowingly made extensive, worldwide, for-profit publication of works that by the Act only the Plaintiffs had the right to publish. In addition, in multiple instances of secondary infringement, the Defendant is distributing the works to such an extent as to affect prejudicially the Plaintiffs, and is by way of trade distributing, exposing and exhibiting the works in public, as well as

possessing the works for the purpose of doing the things referred to above. The Plaintiffs say

that the Defendant knows or should have known that his distribution and possession of the

works infringes copyright or would infringe copyright if it had been made in Canada by the

person who made it.

213.    The Defendant has intentionally and in bad faith taken creative works designed to

promote the commercial success of the Plaintiffs' business, and used them to damage the

Plaintiffs, in terms of their reputations as well as commercially.

214.    The Defendant has infringed the Plaintiffs' copyright, by virtue of having reproduced, or

otherwise produced, all or a substantial part of the Plaintiffs' photographs, or having otherwise

authorized such acts, contrary to Sections 3 and 27 of the *Copyright Act* R.S.C. 1985, c. C-42,

as amended, including without limitation by displaying the images on the website slabbed.org.

## Wrongful Misappropriation of Personality and Violation of the Right to One's Image

215.    The Plaintiffs re-aver the paragraphs above and say that Handshoe repeatedly

misappropriated the personal plaintiff's likeness and violated their rights to their own images.

216.    He did so despite repeated notice that use of the images of the Plaintiffs violated the

copyright of third parties and the Plaintiffs.

217.    The Defendants usurped the Plaintiff's right to control and market their own image and

personality.

218.    Regardless of any commercial rights, the Defendants also invaded the Plaintiffs' privacy

and appropriating another person's image without his or her consent to include it in a *per se*

defamatory publication constitutes a fault. The injury to the Plaintiffs in this case was not

outweighed by the Defendant's right to freedom of expression.

219.    The Plaintiffs have suffered embarrassment and ridicule, had their business acumen

maligned, their valuable Internet presence polluted, and their markets disrupted. Being in the

international tourism industry, the Plaintiffs rely on an excellent Internet reputation for their

business, and third parties who do not personally know the Plaintiffs cannot gage the veracity of the Defendants' multiple, insidious, false publications, which are easily encountered. Handshoe has taken advantage of the Plaintiffs' position to inflict the most injury possible.

220.    The Plaintiffs have repeatedly suffered having their images used for defamatory purposes and the intentional infliction of serious injury to personality by the Defendant.

- - -

221.    The Applicants seek an Order finding the Defendant's infringement on slabbed.org of their copyright in the 4 creative works identified above as well as damages, including statutory damages, pursuant to the *Copyright Act*, as amended.

222.    The Applicants seek aggravated and punitive damages for intentional and bad faith copyright infringement by the Defendant in an amount to be determined by the trier of fact.

**223.**    The Plaintiffs demand judgment against the Defendant Handshoe for general damages for libel *per se*, libel, misappropriation of likeness and violation of the right to one's image,  in an amount to be determined by the trier of fact.

224.    The Plaintiffs demand judgment against the defendant Handshoe for aggravated and punitive damages for defamation in an amount to be determined by the trier of fact.


Signed this 30th day of September, 2013




Charles L. Leary                                Vaughan J. Perret

representing himself &                         representing himself and as an officer

as an officer of Trout Point Lodge             of Trout Point Lodge



To: Douglas K. Handshoe: The Prothonotary, Halifax